UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff(s),<br><br>v.<br><br>MITCHELL JENKINS,<br><br>Defendant(s). | Case No.2:24-CV-346 JCM (EJY)<br><br>ORDER |

Presently before the court is defendant Mitchell Jenkins' appeal of the magistrate's judgment in case no. 2:24-mj-00002-EJY. (ECF No. 1). The magistrate found him guilty of count two of the criminal information, resisting arrest, 43 C.F.R. § 8365.1-4(a)(4). (*Id.*).

**I.  Background**

Jenkins was driving westbound on Tropical Parkway on evening of December 15, 2022. (ECF No. 14 at APP 84; GX-7 at 1:33–1:47). He pulled off the road, apparently because his car was overheating. (GX-7 at 1:33–1:47). He drove past construction signs posted in the area before finally parking his car. (GX-7 at 1:33–1:47; ECF No. 14 at APP 95, 157). This area was subject to an off-highway vehicle (OHV) closure, meaning that vehicles were prohibited within the area. (ECF No. 14 at APP 95:3-18; 128:4–5).

At that time, Bureau of Land Management (BLM) ranger Micaela Morris was patrolling in the area. Morris observed Jenkins' car, a silver Subaru Forester, parked about 100 yards out into the open desert. (*Id.* at APP 74:16–18). She parked her vehicle, activated her patrol vehicle's emergency lights. (*Id.* at APP 75:1–2). She then "radioed [] dispatch that she was engaging in a traffic stop, provided her location, and gave a description of [the vehicle]." (ECF No. 14 at APP 75:1–8).

Morris approached the car and asked Jenkins, the driver, to roll down the window. (*Id.* at 82:8–11). He rolled it down about two inches. (*See* GX-7). Jenkins explained that his car was overheating. (ECF No. 14 at APP 6–7). He repeatedly refused to provide his drivers' license or any form of identification, stating that he did not have it on him, and when asked for a name, he provided a false one. (*Id.* at APP 83:22–23; 84:3–8).

When Morris called for backup and ordered him to turn off his car and step out of the vehicle, Jenkins drove away. (*Id.* at APP 84:18–23). Morris radioed dispatch to report that Jenkins was fleeing, then walked back to her patrol car and followed Jenkins. (*Id.* at APP 85:3-4). When she located his car, Jenkins was not inside. (*Id.* at APP 86:7–18).

Morris later identified Jenkins as the owner of the vehicle, though his name was *Mitchell* Jenkins, not Michael Jenkins as he had informed her. (*Id.* at APP 21–24). Jenkins was cited with a closure violation, resisting arrest, and driving with a suspending license. The government filed a criminal information charging him with the latter two violations. (ECF No. 30).

The magistrate conducted a one-day trial on February 5, 2024, and convicted Jenkins on count two of the information. Jenkins served six months of unsupervised probation, with a condition that he pay a $300 fine or complete 30 hours of community service. Jenkins filed this appeal of the magistrate's order, alleging that the magistrate committed reversible error by admitting an unauthenticated map containing inadmissible hearsay, and that there was insufficient evidence to support Jenkins' conviction for resisting arrest.

**II. Discussion**

A district judge may affirm, reverse, or modify, in whole or in part, a magistrate judge's order, as well as remand with instructions. LR IB 3-1(b). The appropriate scope of the district court's review "is the same in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D).

**A. Reversible error**

District courts review magistrate judge's "evidentiary rulings for abuse of discretion." *United States v. Mirabal*, 98 F.4th 981, 985 (9th Cir. 2024).

. . .

*1. Hearsay*

Jenkins objects to the magistrate's admission of exhibit 3. At trial, the government offered a series of exhibits, including three maps. Jenkins objected to the admission of the maps on hearsay grounds. After hearing arguments from counsel, the magistrate denied admission of the maps constituting exhibits 2 and 4 but admitted exhibit 3 after redacting all markers and additions except for the yellow overlay that reflected BLM lands. (ECF No. 14 at APP 71).

In his opening brief, Jenkins argues that exhibit 3 contained inadmissible hearsay because the yellow overlay on the exhibit 3 map was an assertion (in that it "spoke to land status") and was offered to "prove that the land on which Mr. Jenkins stopped was public land." (*Id.* at 12).

Out of court statements are inadmissible if offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). A statement is defined as "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Fed. R. Evid. 801(a).

It is well established that photographs and satellite images are not hearsay. *See United States v. Lizarraga-Tirado*, 789 F.3d 1107, 1109 (9th Cir. 2015). However, a tack that is manually placed on a map and then labeled (e.g., with a name or GPS coordinates) is "classic hearsay." *Id.* The Ninth Circuit clarified that "a tack placed by the Google Earth program and automatically labeled with GPS coordinates is not hearsay" because hearsay applies only to a *person*'s statements. *Id.* at 1109–10. Machine statements are not hearsay. *See id.*

It is reasonable to understand that the magistrate judge considered the yellow overlay to be an automatic or computer-generated tack. She specifically read the following line from *Lizarraga-Tirado* before admitting exhibit 3: "A specific subsection of the authentication rules allows for the authentication of a process or system with evidence describing the process or system and showing that it produces an accurate result." (ECF No. 14 at APP 71:1–4).

This statement comes from the Ninth Circuit's discussion of machine statement authentication, not manual authentication. Furthermore, the magistrate determined that "the legend, the status, and the pin as well as the West Tropical Parkway and…Shaumber Road…would have to be removed because those are all additions." (ECF No. 14 at APP 70:11–14). This language indicates that she understood the "additions" as manual, and the yellow overlay as made

by a machine such that it was not hearsay.

Jenkins argues that the "source of the information and the circumstances of its creation revealed a lack of trustworthiness." (ECF No. 14 at 14). The magistrate concluded the opposite after hearing testimony from Ranger Morris. Specifically, the magistrate considered that the overlay depicted what Morris was able to see on her vehicle's GPS at the time of the incident, that Morris looked at this map "countless times" per day, and that the overlay was provided by the Lands and Realty Division of the BLM. (ECF No. 14 at 66, 67, 69–70). As to the yellow overlay, she considered it to have "sufficient indicia of reliability to be admissible to demonstrate that the yellow that is demarked in a checkerboard fashion on the…map is BLM land and was BLM land on December 15th, 2022." (ECF No. 14 at 70:15–19).

Finally, the magistrate reviewed *Lizarraga-Tirado* to ensure that she was not running directly afoul of Ninth Circuit precedent. (No. 14, Ex. A at 70:22–23).

Abuse of discretion is a high standard. The magistrate laid out her reasoning, considered the evidence, the parties' arguments, and the controlling law. The court finds that the magistrate judge did not abuse her discretion in admitting exhibit 3 with the yellow overlay.

### 2. *Authentication of Map*

Jenkins argues that Ranger Morris was not the proper party to admit exhibit 3. (ECF No. 14 at 15). Machine statements present evidentiary concerns, which are properly address by the rules of authentication. *Lizarraga-Tirado*, 789 F.3d at 1110. "A proponent must show that a machine is reliable and correctly calibrated, and that the data put into the machine. . .is accurate." *Id.* Jenkins correctly states that the burden of authentication can be met "with testimony from a…programmer or witness who frequently works with or relies on the program." However, it can also be met "through judicial notice of the program's reliability…" *Id.* The magistrate employed the latter tactic, on grounds that it was a government document and there were sufficient indicia of reliability as to the maps created by BLM. (ECF No. 14 at APP 57–60, 70).

### 3. *Confrontation Clause*

Jenkins claims that admission of exhibit 3 violated his confrontation clause rights because it was "testimonial" hearsay, and he did not have an opportunity to cross-examine the declarant.

(ECF No. 14 at 17). This argument fails for two reasons. First, exhibit 3 is not a statement as defined within the rule against hearsay, as addressed above. Second, it is not "testimonial" because the yellow overlay was not created for litigation purposes. (*See* ECF No. 14 at APP48:7–12). Ranger Morris testified that the yellow overlay was "provided to rangers by [the] Lands Office in the Bureau of Land Management" and that it is "usually updated annually." (ECF No. 14 at APP 48:7-12). Accordingly, the admission of the map does not raise any confrontation clause concerns. *See Lizarraga-Tirado*, 789 F.3d at 1110.

### 4. Harmless Error

Evidentiary rulings made in error are subject to harmless error review. *See United States v. Wells*, 879 F.3d 900, 923 (9th Cir. 2018) (citations omitted). The magistrate did not err in admitting exhibit 3 and therefore harmless error review is not appropriate at this stage.

### B. Insufficiency of the evidence

District courts review *de novo* a magistrate's interpretation of the elements of the offense and the sufficiency of the evidence. *United States v. Nevils*, 598 F.3d 1158, 1161 (9th Cir. 2010) (en banc). There is sufficient evidence to support a conviction if, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The evidence is to be "considered in the light most favorable to the prosecution," including the resolution of conflicting inferences. *Wright v. West*, 505 U.S. 277, 296–97 (1992).

> Under 43 C.F.R. § 8365.1-4,
> (a) No person shall cause a public disturbance or create a risk to other persons on public lands by… (4) Resisting arrest or issuance of citation by an authorized officer engaged in performance of official duties; interfering with any Bureau of Land Management employee or volunteer engaged in performance of official duties[.]

The parties did not dispute that Ranger Morris was engaged in official duties. (ECF No. 14 at APP 146:3–5). However, Jenkins argues that the government produced insufficient evidence to convict as to whether: (1) he was on public land; (2) he knew he was on public land; and (3) he caused a public disturbance or risk.

. . .

*1. Public Land*

43 C.F.R. § 8365.1-4(a) applies only when the conduct occurs on public land. There is sufficient evidence that the land on which Ranger Morris found Jenkins was public land.

Morris testified that she was familiar with what lands BLM owns "through [her] training and experience, routine patrols, and agency-provided maps." (ECF No. 14 at APP 42:6–7). The maps, provided by the Lands and Realty Division of BLM, come with a yellow overlay indicating what is BLM property and where there are OHV closures. (ECF No. 14 at APP 42:12–18). Morris uses the maps every day at work indicate what is BLM property as well as OHV closure boundary lines. (ECF No. 14 at APP 42:12–18). Morris testified that on December 15, 2022, she used and relied on the maps countless times, which was why she knew Jenkins was on public property in an OHV closure. (ECF No. 14 at APP 43:6–12).

Construing these facts in the light most favorable to the prosecution, the court concludes that the evidence is sufficient to support the conclusion that Jenkins was on public land. The court does not construe evidence in favor of innocence at this stage of *Jackson* and therefore disregards Jenkins' argument that the desert land where Jenkins was found might have been listed for sale or recently sold to private developers. (ECF No. 14 at 19; ECF No. 14 at APP 127:5–21). A rational juror could find beyond a reasonable doubt that Jenkins was on public land.

*2. Mens Rea*

The *mens rea* for BLM regulations is "knowingly and willfully." *See United States v. Henderson*, 243 F.3d 1168, 1171 (9th Cir. 2001) (discussing 43 U.S.C. § 1733(a)). Read together, the plain language of the statute and regulation require the government to prove beyond a reasonable doubt that Jenkins caused a public disturbance or created a risk to other persons on public lands by resisting arrest or issuance of citation by an authorized officer engaged in performance of official duties, knowing it was unlawful to do so. *See id.* Accordingly, the government had the burden to prove beyond a reasonable doubt that Jenkins knew that he was on public land.

Jenkins claims that the government failed to provide sufficient evidence that he knew he was on public lands.

1    The court begins by construing the evidence in the light most favorable to the prosecution.
2 The government offered testimonial and video evidence that he knew the land was "closed," and
3 that he drove approximately 200 yards past barriers warning him away. (ECF No. 31 at 11; ECF
4 No. 14 at APP 75:9–11). Private construction sites *can* be closed, as Jenkins holds. (ECF No. 14
5 at 15). The evidence proffered by the government at trial is sufficient to support a reasonable
6 conclusion that Jenkins knew he was on public land.

7    Next, the court considers whether any rational trier of fact could find that the defendant
8 knew he was on public land. Jenkins was out in the desert, not sandwiched between housing
9 developments. A desert is not usually indicative of a private construction site. Indeed, there is
10 evidence that defendant intended to *avoid* private housing development and construction. (*See*
11 ECF No. 14 at 22); (GX-7) (dispatch audio) ("I pulled past these construction signs just to be safe,
12 so [he] didn't get hit or block this housing development…entryway."). Interestingly, Jenkins does
13 not claim he believed he was on private land. His claim is that the government did not do enough
14 to prove that he knew that he was on public land. Considering these facts, the court finds that a
15 rational juror could find beyond a reasonable doubt that Jenkins knew he was on public land on
16 December 15, 2022. *See Jackson*, 443 U.S. at 319.

17              *3.  Public disturbance or risk*

18    Finally, Jenkins disputes that the government provided sufficient evidence that defendant
19 caused a public disturbance or created a risk to other persons. There are two issues here: first,
20 whether some "other person" must have been present for the regulation to apply; second, what
21 conduct constitutes a "public disturbance or…risk." *See* 43 C.F.R. § 8365.1-4.

22    Jenkins argues that the "public" or someone other than Ranger Morris must be impacted
23 by defendant's behavior. He cites to disorderly conduct cases from other circuits. (*See* ECF No.
24 14 at 23). This is not a disorderly conduct case. Furthermore those cases are neither binding on
25 nor persuasive to this court.

26    Jenkins also argues that the government failed to provide sufficient evidence that he was a
27 public disturbance or risk to other persons. He did not speed off, his driving was not reckless, and
28 Morris did not display urgency in her pursuit of him. (*See* ECF No. 14 at 25; APP 143:6–9).

1    Under 43 C.F.R. § 8365.1-4, a person causes a public disturbance or creates a risk to other persons on public lands "by engaging in activities which include but are not limited to" a list that includes "resisting arrest or citation" and "interference." The resisting arrest clause is one of many examples of a public disturbance or risk to others. Accordingly, in a resisting arrest case, the government's burden with respect to the public disturbance or risk element is to prove beyond a reasonable doubt that Jenkins either "resist[ed] arrest or citation by an authorized officer engaged in performance of official duties" or "interfere[ed] with any [BLM] employee…engaged in performance of official duties." 43 C.F.R. § 8365.1-4(a)(4).

Here, there is sufficient evidence of a public disturbance. At four separate points, Jenkins repeatedly refused to comply with instructions provided by Morris: he did not roll down his window; he did not provide his driver's license, opting instead to provide a false first name. (ECF No. 31 at 12; *see* ECF No. 14 at APP 146). Finally, when he was told he was not free to leave and that he needed to exit the vehicle, he refused and drove off. (ECF No. 31 at 12; GX-1; *see* ECF No. 14 at APP 146). A rational trier of fact could find that Jenkins, in doing so, resisted arrest, citation, or he was interfering with Morris' performance of her official duties.

**III.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the magistrate's judgment (*see* ECF No. 1) be, and the same hereby is, AFFIRMED.

DATED September 24, 2025.

                                                                         *James C. Mahan*
                                                          UNITED STATES DISTRICT JUDGE